United States District Court
Southern District of Texas
**ENTERED**
September 30, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALFONZO SIMPSON, TDCJ #1427415, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-20-2770 |
| IAN SALSBERY and RICHARD PITTMAN,[1] | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

State inmate Alfonzo Simpson has filed a Prisoner's Civil Rights Complaint under 42 U.S.C. § 1983 ("Complaint") (Docket Entry No. 1) alleging that he was injured when his prison transport bus struck a brick wall. At the court's request, Simpson has also filed Plaintiff's More Definite Statement ("Plaintiff's MDS") (Docket Entry No. 11), which provides additional information about his claims. Now pending before the court is Defendants [Ian] Salsbery and [Richard] Pittman's Motion for Summary Judgment ("Defendants' MSJ") (Docket Entry No. 24). In response, Simpson has submitted an Objection to Defendants' Motion for Summary

---

[1]Although the plaintiff filed this suit initially against two officers identified as "John Salsbury" and "John Pitman," the defendants have advised the court that their correct names are Ian Salsbery and Richard Pittman. See Defendants Salsbery and Pittman's Original Answer, Affirmative Defenses, and Jury Demand, Docket Entry No. 15, p. 1, n.1. The court will refer to the defendants by their correct names. For purposes of identification all page numbers refer to the pagination imprinted on each docket entry by the court's electronic case filing system, ECF.

Judgment ("Plaintiff's Response") (Docket Entry No. 29). After considering all of the pleadings, the exhibits, and the applicable law, the Defendants' MSJ will be granted and this case will be dismissed for the reasons explained below.

## I. Background

Simpson is presently incarcerated by the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ") at the Estelle Unit in Huntsville.[2] Simpson's Complaint stems from an incident that occurred on September 26, 2018, at the Walls Unit, which is also located in Huntsville.[3] The defendants are Ian Salsbery and Richard Pittman, who are employed by TDCJ as transportation officers.[4]

Simpson explains that he was on a prison transport bus with 17 other inmates when Salsbery, who was driving the bus, "crashed into a brick wall" while attempting to leave through the back gate of the Walls Unit facility.[5] Simpson estimates that the bus was going "10 mph" when it struck the wall.[6] At the time the crash occurred, Officer Pittman was outside the bus acting as a "guide man."[7] Simpson alleges that Salsbery and Pittman failed to report the crash

---

[2]Complaint, Docket Entry No. 1, p. 3.

[3]Id. at 4.

[4]Id. at 3.

[5]Plaintiff's MDS, Docket Entry No. 11, p. 2.

[6]Id.

[7]Id.

or contact the medical department to check whether any of the inmate passengers were injured.[8] Instead, the officers made two more attempts to exit the back gate, crashing into the brick wall a second and third time.[9] Simpson contends that he felt sharp pains in his neck, lower back, and right hip after the first crash occurred and that his discomfort worsened after each ensuing crash.[10]

Simpson alleges that he advised Salsbery and Pittman that he needed to go to the medical department because he felt "stiffness, soreness and pain" in his neck, lower back, and right hip.[11] Simpson states that the officers pulled the bus into the back gate of the Walls Unit and contacted the medical department sometime after the third crash occurred.[12] Although Simpson reported his injuries to an unidentified "'white male' nurse" from the medical department, the nurse did not check his blood pressure or his pulse and did not perform a physical examination to "stabilize" Simpson's condition before the bus continued on its way to the Polunsky Unit,[13] which is located in Livingston.[14]

---

[8] Id.

[9] Id.

[10] Id. at 4.

[11] Id.

[12] Complaint, Docket Entry No. 1, p. 6.

[13] Id.

[14] The court takes judicial notice under Rule 201(b) of the Federal Rules of Evidence of the fact that Huntsville and Livingston are approximately 43 miles apart.

Simpson reports that he did not receive medical treatment for his injuries until after he arrived at the Polunsky Unit.[15] Upon arrival Simpson was escorted to the infirmary where an unidentified "intake nurse" told him that they were aware of the bus accident, but that he would need to submit a "sick call request" to receive treatment.[16] Simpson received medical care at the Polunsky Unit on October 24, 2018, and he was examined by a specialist who took x-rays at the University of Texas Medical Branch ("UTMB") Hospital in Galveston on November 2, 2018.[17] Simpson complains that he waited until December 16, 2019, to receive an "MRI" at the UTMB Hospital, where a doctor determined that he had a "spinal infection, massive swelling around [a] nerve, [a] lower back issue, and a need for hip replacement."[18]

Simpson appears to allege that Salsbery and Pittman failed to follow the "TDCJ Accident Policy" by not contacting the medical department immediately after the first crash that occurred at the Walls Unit on September 26, 2018.[19] Simpson contends that Salsbery and Pittman acted with "reckless disregard" to his rights by denying him access to prompt medical attention or postponing

---

[15]Complaint, Docket Entry No. 1, p. 6.

[16]Id.

[17]Plaintiff's MDS, Docket Entry No. 11, p. 5.

[18]Complaint, Docket Entry No. 1, p. 6.

[19]Plaintiff's MDS, Docket Entry No. 11, p. 3.

treatment for the injuries he sustained during the bus accident.[20] Invoking 42 U.S.C. § 1983, he seeks compensatory damages for his pain and suffering.[21]

Salsbery and Pittman move for summary judgment, arguing that Simpson failed to exhaust available administrative remedies regarding his claims against them before filing his Complaint.[22] The defendants argue further that Simpson fails to establish a constitutional violation or to overcome their entitlement to sovereign immunity under the Eleventh Amendment and qualified immunity from the claims against them.[23] These arguments are examined below under the applicable standard of review.

## II. Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Under this rule a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2021); see also Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law.

---

[20]Id.

[21]Complaint, Docket Entry No. 1, p. 4.

[22]Defendants' MSJ, Docket Entry No. 24, pp. 3-7.

[23]Id. at 8-12.

Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Id.

In deciding a summary judgment motion, the reviewing court must view all facts and inferences in the light most favorable to the nonmovant and resolve all factual disputes in his favor. See Shah v. VHS San Antonio Partners, L.L.C., 985 F.3d 450, 453 (5th Cir. 2021). If the movant demonstrates an "absence of evidentiary support in the record for the nonmovant's case," the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial." Sanchez v. Young County, Texas, 866 F.3d 274, 279 (5th Cir. 2017) (citing Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 812 (5th Cir. 2010)). The nonmovant cannot avoid summary judgment by resting on his pleadings or presenting "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." Jones v. Lowndes County, Mississippi, 678 F.3d 344, 348 (5th Cir. 2012) (citation and quotation marks omitted); see also Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a nonmovant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence).

The plaintiff represents himself in this case. Courts are required to give a pro se litigant's contentions a liberal construction. See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007)

(per curiam) (citation omitted). Nevertheless, a pro se litigant is not excused from meeting his burden of proof of specifically referring to evidence in the summary judgment record and setting forth facts showing that there is a genuine issue of material fact remaining for trial. See Outley v. Luke & Associates, Inc., 840 F.3d 212, 217 (5th Cir. 2016); see also Bookman v. Shubzda, 945 F. Supp. 999, 1004 (N.D. Tex. 1996) (citing Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (citation omitted)). The court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." Adams v. Travelers Indemnity Co. of Connecticut, 465 F.3d 156, 164 (5th Cir. 2006) (quotation marks omitted).

### III. Discussion

#### A. Lack of Exhaustion

The defendants have raised lack of exhaustion as an affirmative defense to liability.[24] See Herschberger v. Lumpkin, 843 F. App'x 587, 590 (5th Cir. 2021) (emphasizing that "the failure to exhaust administrative remedies is an affirmative defense and must generally be pled by defendants in order to serve as the basis for dismissal") (citations omitted). Because this case is governed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), Simpson was required to exhaust administrative

---

[24]Defendants' MSJ, Docket Entry No. 24, pp. 3-7.

remedies before filing a suit challenging prison conditions.[25] See Woodford v. Ngo, 126 S. Ct. 2378, 2382-83 (2006) (citing Porter v. Nussle, 122 S. Ct. 983, 988 (2002); Booth v. Churner, 121 S. Ct. 1819, 1825 (2001)); see also Jones v. Bock, 127 S. Ct. 910, 918-19 (2007) (confirming that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

TDCJ has a formal two-step administrative grievance process. See Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004); see also Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (outlining the two-step procedure, which at Step 1 entails submitting an administrative grievance at the institutional level followed by a Step 2 appeal if the result is unfavorable). A Step 1 grievance, which is reviewed by officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event. See Johnson, 385 F.3d at 515. Once an inmate receives a response to his Step 1 grievance, he then has ten days to file a Step 2 grievance to appeal an unfavorable result at the state level. See id.

---

[25]Section 1997e(a) provides that

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The two step grievance process, which is outlined in the TDCJ Offender Orientation Handbook, takes approximately 90 days to complete -- depending on the type of issue raised by the inmate.[26] A Texas prisoner must pursue a grievance through both steps to satisfy the exhaustion requirement. See Johnson, 385 F.3d at 515. Substantial compliance with this process is not enough to exhaust remedies under the PLRA. See Dillon v. Rogers, 596 F.3d 260, 268 (5th Cir. 2010) ("Under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion . . .").

The bus accident that forms the basis of Simpson's Complaint against Officer Salsbery and Officer Pittman took place on September 26, 2018.[27] Salsbery and Pittman have provided records of all grievances filed by Simpson between August of 2018 and December of 2020.[28] The records show that Simpson filed a Step 1 Grievance #2019023001 on September 30, 2018, objecting to inaction by the "medical department and Polunsky Unit" on his sick-call request for medical care following the bus accident.[29] However, his

---

[26] See Defendants' MSJ, Docket Entry No. 24, p. 4; see also Offender Orientation Handbook, Exhibit B to Defendants' MSJ, Docket Entry No. 24-3, pp. 4-6; Offender Administrative Review and Risk Management Division, Offender Grievance Operations Manual, Exhibit C to Defendants' MSJ, Docket Entry No. 24-4, p. 3.

[27] Complaint, Docket Entry No. 1, p. 4.

[28] Offender Simpson's Grievance Records, Exhibit A to Defendants' MSJ, Docket Entry No. 24-2, pp. 1-182.

[29] Step 1 Grievance #2019023001, Exhibit A to Defendants' MSJ, Docket Entry No. 24-2, pp. 3-4.

grievance makes no mention of Salsbery or Pittman or his claim that these officers denied him prompt access to medical treatment on September 26, 2018.[30] According to the administrative response, which is dated November 28, 2018, no action was warranted because Simpson's medical records showed that he had been "seen by nursing on several occasions" and evaluated by a medical provider multiple times at the Polunsky Unit.[31] He also had received treatment at the UTMB Hospital in Galveston.[32] Simpson did not appeal the result by filing a Step 2 Grievance, and there is no other indication in the record that he exhausted the two-step process available in TDCJ before filing his Complaint.

Simpson contends that he filed another grievance regarding his claims against Salsbery and Pittman, referencing "Grievance Number 2019015094."[33] Simpson does not provide a copy of this grievance or provide a citation to its location in the record, stating only that it can be found in "Defendants Ex. A."[34] The court has reviewed Exhibit A to the Defendants' MSJ, which contains just over 180 pages of Simpson's grievances and records related to the investigation of those grievances.[35] There does not appear to be

---

[30]See id.

[31]See id. at 4.

[32]See id.

[33]Plaintiff's Response, Docket Entry No. 29, p. 2.

[34]Id.

[35]Offender Simpson's Grievance Records, Exhibit A to Defendants' MSJ, Docket Entry No. 24-2, pp. 1-182.

a Grievance Number 2019015094 in the record. Simpson does not point to any other proof that he exhausted administrative remedies as required before filing his Complaint, and his unsupported allegations are insufficient to raise a genuine issue of fact.

Because "pre-filing exhaustion" is "mandatory," the Fifth Circuit has emphasized that "[d]istrict courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint." Gonzalez v. Seal, 702 F.3d 785, 788 (5th Cir. 2012). Therefore, a case "must be dismissed if available administrative remedies were not exhausted." Id. Because Simpson has not demonstrated that he exhausted administrative remedies as required before filing suit, this action is subject to dismissal for failure to comply with 42 U.S.C. § 1997e(a). The dismissal will be with prejudice because, for reasons discussed in more detail below, Simpson does not demonstrate a constitutional violation or overcome the defendants' entitlement to sovereign immunity under the Eleventh Amendment and the doctrine of qualified immunity.

B.  Sovereign Immunity - Eleventh Amendment

The defendants contend that they are entitled to sovereign immunity under the Eleventh Amendment from Simpson's claim against them in their official capacity as employees of TDCJ, which is an agency of the State of Texas.[36] See Tex. Gov't Code § 493.001,

---

[36]Defendants' MSJ, Docket Entry No. 24, p. 12.

et seq. Unless expressly waived, the Eleventh Amendment bars an action in federal court by a citizen of a state against his or her own state, including a state agency. See Will v. Michigan Dep't of State Police, 109 S. Ct. 2304, 2309 (1989). The Eleventh Amendment also bars a federal action for monetary damages against state officials when the state itself is the real party in interest. See Pennhurst State School & Hospital v. Halderman, 104 S. Ct. 900, 908-09 (1984). A suit against a state official in his or her official capacity is considered a suit against the state itself. See Will, 109 S. Ct. at 2312 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (internal citations omitted)).

Texas has not waived its Eleventh Amendment immunity and Congress did not abrogate that immunity when it enacted 42 U.S.C. § 1983. See NiGen Biotech, L.L.C. v. Paxton, 804 F.3d 389, 394 (5th Cir. 2015) (citing Quern v. Jordan, 99 S. Ct. 1139, 1145 (1979)). Because TDCJ is a state agency, Officer Salsbery and Officer Pittman are entitled to immunity from any claim for monetary damages against them in their official capacity as TDCJ employees. See Loya v. Texas Dep't of Corrections, 878 F.2d 860, 861 (5th Cir. 1989) (per curiam) ("[TDCJ]'s entitlement to immunity under the [E]leventh [A]mendment is clearly established in this circuit."); Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002)

("[T]he Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity."). As a result, the defendants are entitled to summary judgment on this issue.

C. Qualified Immunity

The defendants have also asserted qualified immunity from liability for Simpson's claim for monetary damages against them in their personal capacity, arguing that he has not shown that their conduct violated his constitutional rights.[37] "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982)). "'[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken.'" Messerschmidt v. Millender, 132 S. Ct. 1235, 1245 (2012) (quoting Anderson v. Creighton, 107 S. Ct. 3034, 3038 (1987) (citation omitted)).

"[A] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the

---

[37]Defendants' MSJ, Docket Entry No. 24, pp. 8-12.

-13-

plaintiff to show that the defense is not available." Ratliff v. Aransas County, Texas, 948 F.3d 281, 287 (5th Cir. 2020) (quotation marks and citation omitted). "The plaintiff must show that (1) 'the officer violated a federal statutory or constitu-tional right' and (2) 'the unlawfulness of the conduct was clearly established at the time.'" McCoy v. Alamu, 950 F.3d 226, 230 (5th Cir. 2020) (quoting Rich v. Palko, 920 F.3d 288, 294 (5th Cir.), cert. denied, 140 S. Ct. 388 (2019)). A plaintiff seeking to meet this burden at the summary-judgment stage "may not rest on mere allegations or unsubstantiated assertions but must point to specific evidence in the record demonstrating a material fact issue concerning each element of his claim." Mitchell v. Mills, 895 F.3d 365, 370 (5th Cir. 2018) (citations omitted).

Simpson alleges that Salsbery and Pittman failed to follow the TDCJ policy after the bus accident occurred at the Walls Unit and that they violated his rights by postponing or delaying access to medical treatment for the injuries he sustained until after he arrived at the Polunsky Unit.[38] A violation of prison policy or rules, standing alone, is not sufficient to demonstrate a constitu-tional violation. See Jackson v Cain, 864 F.2d 1235, 1251-52 (5th Cir. 1989); Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986) (per curiam). To establish a claim for the denial of adequate medical care a prisoner must demonstrate that prison

---

[38]Complaint, Docket Entry No. 1, pp. 4, 6; Plaintiff's MDS, Docket Entry No. 11, pp. 2-4.

officials violated the Eighth Amendment by acting with "deliberate indifference to a prisoner's serious illness or injury[.]" Estelle v. Gamble, 97 S. Ct. 285, 291 (1976).

The deliberate indifference standard is an "extremely high" one to meet. Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). A showing of deliberate indifference requires the prisoner to demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006) (citation and quotation marks omitted). The Fifth Circuit has emphasized that allegations of delay in medical care only violate the Constitution "if there has been deliberate indifference that results in substantial harm." Rogers v. Boatright, 709 F.3d 403, 410 (5th Cir. 2013) (emphasis in original) (quoting Easter v. Powell, 467 F.3d 459, 464 (5th Cir. 2006)); see also Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Simpson acknowledges that the defendants contacted the medical department at the Walls Unit after the bus accident occurred and that he was seen by an unidentified nurse before the bus continued on its way to the Polunsky Unit.[39] Simpson was escorted to the unit infirmary upon his arrival at the Polunsky Unit, where he was advised by an intake nurse to submit a sick-call request for

---

[39] Complaint, Docket Entry No. 1, p. 6.

treatment.[40]  Simpson does not allege facts showing that his condition worsened or that he suffered substantial harm as the result of delay attributable to Salsbery or Pittman. As a result, his allegations are not sufficient to establish a constitutional violation by these defendants.[41]  See Rogers, 709 F.3d at 410; Easter, 467 F.3d at 464; Mendoza, 989 F.2d at 193. Because Simpson has not demonstrated a constitutional violation, Salsbery and Pittman are entitled to qualified immunity and summary judgment in their favor.

## IV.  Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1. Defendants Ian Salsbery and Richard Pittman's Motion for Summary Judgment (Docket Entry No. 24) is **GRANTED**.

2. This civil action will be dismissed with prejudice.

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 30th day of September, 2021.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

---

[40]Id.

[41]Salsbery and Pittman are the only defendants named in this case. To the extent that Simpson complains about the length of time it took for him to receive an MRI or any other delays in receiving treatment from medical providers, he has not listed any medical providers as defendants. See Complaint, Docket Entry No. 1, p. 6. As a result, that issue is not before the court.